UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL GONZALEZ,

                    Plaintiffs,

      v.                                      9:14-CV-1438
                                                       (GLS/DEP)

CHERYL MORRIS; et al.,

                    Defendants.

APPEARANCES:

MICHAEL GONZALEZ
Plaintiff, pro se
5850 Sundown Circle
Apt. 211
Orlando, Florida 32822

GARY L. SHARPE
Chief United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

The Clerk has sent to the Court for review a pro se civil rights complaint filed by plaintiff Michael Gonzalez pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an in forma pauperis application. Dkt. No. 1 ("Compl."), Dkt. No. 7 ("IFP Application").

## II. DISCUSSION

### A. IFP Application

On November 25, 2014, while confined to Adirondack Correctional Facility ("Adirondack C.F."), plaintiff filed a motion for leave to proceed in forma pauperis. Dkt. No. 2. On the same day, plaintiff filed a Notice stating that, upon his release on December 3, 2014,

he would be residing in Sunnyside, New York. Dkt. No. 4. On December 3, 2014, plaintiff was discharged from DOCCS custody. On December 9, 2014, the Court denied plaintiff's IFP application but gave plaintiff thirty (30) days to pay the statutory filing fee or submit a renewed IFP application outlining his financial condition and economic need. Dkt. No. 5. On December 22, 2014, plaintiff timely filed his renewed non-prisoner application to proceed without prepaying fees or costs. Dkt. No. 7. Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need. Therefore, plaintiff's IFP Application is granted.

### B. Initial Screening

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. *See Johnson v. New York D.O.C.C.S.*, No. 11-CV-79, 2012 WL 1191538, at *2 (W.D.N.Y. Apr. 9, 2012) (noting that § 1915(e), as amended by Prison Litigation Reform Act of 1995, applies to both prisoner and non-prisoner in forma pauperis actions). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action

---

[1] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

3

conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

    **C.    Summary of the Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

In August 2012, plaintiff was confined at Bare Hill Correctional Facility ("Bare Hill C.F."). Compl. at 9. From October 2012 through November 2012, plaintiff received Santeria

beads through the package room.² *See id.* A person wishing to practice Santeria must first receive protection beads. *See id.* at 5. Usually, "Santeros" wear nine to twelve beads. Compl. at 7. In June 2013, plaintiff was transferred to the Special Housing Unit ("SHU") at Upstate Correctional Facility ("Upstate C.F."). *See id.* at 9. While in the SHU, plaintiff was "forced to wear one Santeria bead, due to a policy created by defendant Cheryl Morris ("Morris")", Director of Ministerial, Family and Volunteer Services. *See id.* Plaintiff also alleges that Morris "restricted and imposed a burden upon plaintiff" by ordering plaintiff to wear three beads while in general population. *See id.*

On March 18, 2014, plaintiff was transferred to Adirondack C.F. Compl. at 9. Upon his transfer, defendants refused to provide plaintiff access to herbs, incense, matches/lighters, egg shells, statutes, small stones and religious items that were necessary to properly make rituals, ceremonies and offerings for the Santeria practices. *See id.* at 9-11.

Plaintiff wrote to Deputy Superintendent of Programs, Stan Barton ("Barton") and asked Barton to re-evaluate his requests.³ Compl. at 10. Barton "verbally denied" plaintiff's requests through Father Victor Lamore.⁴ *See id.* at 10-11. Barton used Lamore as a "messenger" to advise plaintiff that "he was not going to approve anything." *See id.* at 11. In September 2014, Father Lamore visited plaintiff on four occasions and in October 2014, Father Lamore visited plaintiff on three occasions. *See id.* During these visits, they

---

² "Santeria originated in Cuba as a combination of the Western African Yoruba Religion and Iberian Catholicism." *Blast v. Fischer*, 2007 WL 2815754, at *1, n.1 (W.D.N.Y. Sept. 20, 2007) (citation omitted). "It is one of the many syncretic religions created by Africans brought to the Caribbean islands as slaves." *Id*. (citations omitted).

³ Defendant Joseph Payton ("Payton") was Barton's predecessor. *See* Compl. at 10.

⁴ Father Lamore is not a defendant herein.

5

discussed plaintiff's requests. Barton and defendants continued to refuse to give plaintiff an area to perform his rituals and refused to allow plaintiff to perform rituals in his room. Compl. at 12. Plaintiff alleges that Father Lamore offered to supervise plaintiff during his practices. *See id.* at 15. Defendants also refused to issue a memorandum to the staff at Adirondack C.F. regarding Santeria shrines/altars. Plaintiff claims that while shrines/altars should not be moved and that no items could be placed in the shrine/altar, the staff interfered, disturbed and "mess[ed] with his shrine/altar." *See id.* at 11, 15. Plaintiff claims that Native Americans were allowed to "burn their sacred herbs" and "enjoy rights even in the SHU at UCF." Compl. at 11.

Plaintiff alleges that defendants failed to provide him with a location to practice his religion, make his ceremonies and hold the necessary "materials" including matches/lights and incense/cigars. Compl. at 14. Plaintiff claims that defendants had "policy making authority" and refused to correct the religious calendar and update Directives with respect to Santeria in violation of plaintiff's First Amendment rights. Compl. at 13. Plaintiff claims that defendants were aware that their policies burdened plaintiff, "through meetings, emails and letters with senior staff members and clergy members." *See id.* Plaintiff also alleges that defendants violated his Eighth Amendment rights by imposing burdens upon plaintiff rendering him unable to practice his religion. *See id.* at 14. Plaintiff contends that his Fourteenth Amendment rights to Equal Protection were violated because defendants refused to provide plaintiff with materials and space to perform his rituals, "although Native Americans enjoy this accommodation." *See id.*

**D.    Analysis**

**1.    Personal Involvement**

It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Throughout the complaint, plaintiff collectively refers to "defendants" as a group. Such generalized allegations are insufficient to state a claim against an individual defendant. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). The Court analyzes the

7

specific allegations, or lack thereof, against each defendant below.

    **a.**    **Claims Against Jeffrey Tedford ("Tedford")**

The complaint is devoid of factual allegations demonstrating that Tedford was personally involved in any constitutional deprivation. Plaintiff names Tedford in the caption of the complaint but he does not assert any specific allegations of wrongdoing by Tedford. Indeed, Tedford is not referenced anywhere in the body of the complaint. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (since the defendant is nowhere mentioned or referenced in the body of the amended complaint, the plaintiff has not adequately pled his personal involvement in any of the constitutional deprivations alleged in the amended complaint). The Court recognizes that plaintiff is proceeding pro se and that this requires the Court to treat his pleadings with a certain degree of liberality; despite this, in the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him. The factual allegations do not support plaintiff's conclusory assertions. The Court should not be left to guess what plaintiff was intending in connection with these claims, and it would be difficult for the defendant to adequately respond to the claims as set forth by plaintiff. Thus, plaintiff's claims against Tedford are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

    **b.**    **Claims Against Payton**

Plaintiff names Payton as a defendant in the caption. However, the body of the complaint contains only one reference to Payton. Plaintiff alleges that he advised "defendants", while in "ADK" that he "needed special accommodations to practice his belief." Compl. at 10. Plaintiff qualifies "defendants" by stating, "[d]efendants with the exclusion of Defendant DSP Stan Barton (at the time of this letter/complaint DSP Stan Barton position [sic] was his precedor [sic] DSP Joseph Payton)." *See id.*

The Second Circuit has cautioned courts against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement). Here, however, plaintiff merely states that he sent one letter to Payton. Plaintiff does not indicate when he sent the letter or where the letter was sent. Without more, this allegation is not enough to allege Payton's personal involvement in any constitutional deprivation. *See Woodward v. Perez*, 2014 WL 4276416, at *8 (S.D.N.Y. Aug. 29, 2014) (citations omitted). Thus, plaintiff's claims against Payton are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

    **c.    Morris and Barton**

Plaintiff alleges that Morris failed to update and properly train DOCCS staff as to what practices and items were permitted for inmates seeking to practice Santeria. Compl. at 4-5. Plaintiff also claims that Morris created policies relating to the number of beads that inmates could wear in the SHU and general population that restricted and imposed a burden on

9

plaintiff.  *See id.* at 9.  Plaintiff contends that Morris ignored plaintiff's "numerous requests."  *See id.* at 12.

Plaintiff claims that Barton had the authority to implement policy and procedure regarding religious services and the authority to permit plaintiff to practice Santeria.  Compl. at 4.  Plaintiff alleges that he wrote to Barton asking for a "re-evaulation [sic] of the past denied request" and that Barton sent Father Lamore to deny plaintiff's requests.  *See id.* at 10-11.  Plaintiff asked for a written response from Barton but Lamore stated that Barton "was using him as a messenger and he was not going to approve anything."  *See id.* at 11.  Plaintiff contends that he discussed Barton's denial with Lamore "seven times" from September 2014 through October 2014.  *See id.*

The Court finds that the complaint alleges enough to warrant a responsive pleading from Morris and Barton.  *See Selah v. Fischer*, No. 09-CV-1363 (GLS/DEP), 2013 WL 5603866, at *10 (N.D.N.Y. Oct. 11, 2013) (allegations that Morris promulgated rules and polices concerning Rastafarianism and decisions about practices and observances that defendants used to subject plaintiff to discrimination were sufficient to plausibly suggest personal involvement).  In so ruling, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. First Amendment Claims

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex

duties arising from administration of the penal system." *Id*. (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).  A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.  *Ford*, 352 F.3d at 590.  A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).  Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened,"[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational."  *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

Here, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the complaint alleges enough to warrant a responsive pleading from defendants.  In so ruling, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

11

*See Lloyd v. City of New York*, No. 12 Civ. 3303, 2014 WL 4229936, at *6 (S.D.N.Y. Aug. 4, 2014) ("[d]efendants have not answered, and so have not yet articulated any 'legitimate penological interest' or 'compelling state interest' that would justify the alleged 'substantial burden' on [p]laintiffs' sincerely held religious beliefs under the Free Exercise Clause or RLUIPA. They may yet do so, of course, but as [p]laintiffs have satisfied their less-than onerous task of pleading that [d]efendants placed a substantial burden on their ability to freely exercise their religion.").

### 3.     Religious Land Use and Institutionalized Persons Act ("RLUIPA")

Plaintiff alleges that defendants "conspired" to infringe upon his constitutional rights in violation of RLUIPA.  Compl. at 12.  RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc–1(a) (2012).   Only injunctive relief is available under RLUIPA and RLUIPA does not authorize monetary damages against state officers in their official capacities.  *Loccenitt v. City of new York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013); *see also Sossamon v. Texas*, 131 S.Ct. 1651 (2011).  Courts analyzing RLUIPA claims use the First Amendment "sincerely held religious beliefs" standard to determine whether a plaintiff was engaged in a "religious" exercise.  *See Sioleski v. McGrain*, No. 10-CV-0665S, 2012 WL 32423, at *2, n. 2 (W.D.N.Y. Jan. 5, 2012) (citations omitted).

Here, plaintiff seeks injunctive relief and requests that the Court issue an order directing defendants to allow Santeria practitioners accommodations and items necessary to

practice their faith. Compl. at 16. Plaintiff's request for injunctive relief regarding his right to practice his faith at Adirondack C.F. is moot because he has been released from incarceration. "In this Circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Rahman v. Fischer*, No. 10-CV-1496 (LEK/TWD), 2014 WL 688980, at *19 (N.D.N.Y. Feb. 20, 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citations omitted). Thus, plaintiff's RLUIPA claims are dismissed without leave to amend.

### 4. Eighth Amendment

The Eighth Amendment mandates that prison officials take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." *Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996). Deliberate indifference has two necessary components, one objective and the other subjective. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

> First, the plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs. Second, the plaintiff must demonstrate that the defendants imposed those conditions with deliberate indifference.

*McAllister v. Garrett*, No. 10-CIV-3828, 2011 WL 3875423, at *10 -11 (S.D.N.Y. Sept. 1, 2011) (citing *Welch v. Bartlett*, 125 F. App'x 340, 342 (2d Cir. 2005)).

Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct.


28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "Therefore, to establish the objective element of an Eighth Amendment violation, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Id*. (citing *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)). Under the subjective element, deliberate indifference "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F. 3d at 703 (quoting *Hathaway*, 99 F.3d at 553).

Here, plaintiff merely states that defendants, "violated his Eight[h] Ame[n]dment by imposing burdens upon plaintiff, where plaintiff was unable to practice his religion and force [sic] plaintiff, as well as restricted and interferred [sic] with plaintiff's Santeria practices, to not make his offerings and rituals." Compl. at 14. Plaintiff's allegations do not plausibly suggest a claim under the Eighth Amendment. *See Smith v. Goord*, No. 04-CV-6432, 2006 WL 2850597, at *7 (W.D.N.Y. Sept. 22, 2006) (the plaintiff's allegations of "religious proselytizing" by the defendants did not sufficiently allege facts that would constitute a serious deprivation of a basic need or violate contemporary standards of decency). Thus, plaintiff's Eighth Amendment claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

    **5.**    **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment requires that "state actors [ ] treat similarly situated people alike." *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). To prove an equal protection violation, claimants must prove that they were purposefully discriminated against or intentionally treated differently than others similarly situated*. Id.* Furthermore, a plaintiff "also must show that the disparity in treatment cannot

survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir.2005) (internal quotation marks and citations omitted).

Here, plaintiff has sufficiently plead facts to state a claim for denial of equal protection against defendants to survive sua sponte review and require a response. *See Guillory v. Fischer,* No. 12-CV-0280 (LEK/RFT), 2013 WL 1294626, at *16 (N.D.N.Y. March 7, 2013) ("Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and [p]laintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons."). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 7) is **GRANTED**[5]; it is further

**ORDERED** that plaintiff's RLUIPA claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which

---

[5] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

relief may be granted: (1) claims against Tedford; (2) claims against Payton; and (3) Eighth Amendment claims;[6] and it is further

**ORDERED**, that the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summonses and Complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the complaint be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

---

[6] If plaintiff wishes to pursue one or more of the claims dismissed without prejudice, he is advised to seek leave to amend the Complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure and Rule 7.1(a)(4) of the Local Rules. Plaintiff is further advised that, if accepted for filing, any amended complaint will entirely replace their original complaint and incorporation of prior claims is not permitted. Therefore, any amended complaint should set forth all the claims plaintiff wishes to pursue and identify all defendants responsible for those claims.

**change in his address; their failure to do so will result in the dismissal of his action**; and it is further

  **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Date: January 27, 2015
   Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court