**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL GONZALEZ,**

**9:14-cv-1438**
**Plaintiff,**                                          **(GLS/DEP)**

**v.**

**CHERYL MORRIS et al.,**

**Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Noah A. Kinigstein               NOAH A. KINIGSTEIN, ESQ.
315 Broadway, Suite 200
New York, NY 10007

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN          LOUIS JIM, ESQ.
New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Michael Gonzalez commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments against Cheryl Morris, New York State Department of Corrections and Community Supervision (DOCCS) Director of Ministerial, Family and Volunteer Services, and Stanley Barton, Deputy Superintendent of Programs at Adirondack Correctional Facility.  (*See generally* Compl., Dkt. No. 1; Dkt. No. 30, Attach. 7 at 1.)[1]  Pending is defendants' motion for summary judgment.  (Dkt. No. 30.)  For the reasons that follow, defendants' motion is granted in part and denied in part.

### II. Background

### A.    Facts[2]

Gonzalez was a New York State prisoner at the time of the events referred to in his complaint and when he filed the complaint.[3]  (Defs.'

---

[1] Gonzalez's complaint included additional claims and defendants, but the court's Decision and Order dated January 27, 2015 dismissed them.  (Dkt. No. 9.)

[2] Unless otherwise noted, the facts are undisputed.

[3] Gonzalez filed a *pro se* complaint, (Compl.), but he obtained representation prior to defendants' motion for summary judgment, (Dkt. Nos. 25, 30).

Statement of Material Facts (SMF) ¶ 1, Dkt. No. 30, Attach. 1.)  Gonzalez

alleges that as a practitioner of the religion Santeria,[4] he must wear five

strands of colored beads.  (Dkt. No. 30, Attach. 5 at 8; Dkt. No. 34 at 1-2.)

While incarcerated in the Special Housing Unit (SHU) at Upstate

Correctional Facility in 2013, he filed a grievance because he was only

allowed to wear one bead strand.[5]  (Dkt. No. 30, Attach. 5 at 8-9; Defs.'

SMF ¶¶ 3, 7.)[6]  The Inmate Grievance Resolution Committee (IGRC) found

that it was "beyond the capacity of the IGRC to change the policy" of

allowing only one bead strand to be worn in SHU.  (Dkt. No. 30, Attach. 5

at 11; Defs.' SMF ¶¶ 5, 9.)  Gonzalez appealed to the superintendent, (Dkt.

No. 30, Attach. 5 at 11), who agreed with the IGRC's denial, (id. at 12;

Defs.' SMF ¶ 10).  Gonzalez then appealed to the Central Office Review

Committee (CORC), which affirmed.  (Dkt. No. 30, Attach. 3 at 6; Defs.'

SMF ¶¶ 11-12.)

---

[4] Gonzalez's complaint and opposition to summary judgment give background information about Santeria, including the importance of bead strands.  (Compl. ¶¶ 15-22; Dkt. No. 34 at 1-2.)

[5] Although Gonzalez referred to "one bead," he meant one bead strand.  (Defs.' SMF ¶ 7.)  The limitation of allowing only one bead strand while in SHU was included in the DOCCS Religious Calendars for 2013 and 2014.  (Id. ¶ 27.)

[6] Gonzalez's complaint also alleges that he was limited to wearing three bead strands while in general population.  (Compl. ¶ 37.)  But Gonzalez did not contest that he was never in general population at Upstate Correctional Facility because he was always housed in SHU. (Defs.' SMF ¶ 6.)

After being transferred to Adirondack Correctional Facility, (Defs.'

SMF ¶ 13), Gonzalez filed another grievance because he was denied

matches or a lighter to burn offerings[7] as part of his practice of Santeria,

(Dkt. No. 30, Attach. 2 at 7).[8]  In the same grievance, Gonzalez also

complained that he could not build a shrine,[9] another element of Santeria.

(*Id.*)  The IGRC denied the grievance, noting that "[Gonzalez] has been

given options of how to conduct his religious observances[] within the

confines of th[e] facility's policy and procedures."  (*Id.* at 9.)  Gonzalez

appealed to the superintendent.  (*Id.*)  An investigative report to Joseph

Payton, Deputy Superintendent of Programs at Adirondack Correctional

Facility at the time, noted that matches and lighters "are considered

contraband at this facility," and that Gonzalez could have a shrine under

certain conditions.  (*Id.* at 12; Compl. ¶ 7; Dkt. No. 30, Attach. 7 at 5.)  The

report also stated that Gonzalez could "approach the coordinating

[c]haplain about ordering electric candles" and that "[t]he facility is willing to

---

[7] Such offerings include incense and cigars.  (Dkt. No. 30, Attach. 2 at 7; Compl. ¶ 20.)

[8] Gonzalez disputes defendants' characterization of the Adirondack grievance, (Dkt. No. 38 ¶¶ 4, 14), and refers to the grievance itself, (Dkt. No. 30, Attach. 2 at 7); the court also refers to the grievance itself.

[9] In his complaint, Gonzalez uses the terms "shrine" and "altar" interchangeably.  (*See generally* Compl.)  For consistency, the court uses the term shrine.

4

work with [Gonzalez] concerning his religious requirements."  (Dkt. No. 30, Attach. 2 at 12.)

Upon appeal, the superintendent also denied Gonzalez's grievance. (*Id.* at 10.)  In his appeal statement to the CORC, Gonzalez wrote, among other things, "[I]f Native Americans are accom[m]odated why can [sic] Santeria too??"  (*Id.*)  The CORC upheld the denial and clarified the limitations on shrines.[10]  (Dkt. No. 30, Attach. 3 at 8.)  The CORC's decision also noted the availability of electric candles and that "the facility administration has been granted waivers prohibiting inmates from possessing matches or lighters."  (*Id.*)

Gonzalez claims that he filed six or seven grievances.  (Dkt. No. 38 ¶ 2.)  However, the only other grievance in the record before the court that proceeded to a CORC decision is one concerning religious meals.  (Dkt. No. 35, Attachs. 8, 19.)[11]  Gonzalez grieved that "[t]he State only has 2

---

[10] The superintendent stated that possessing a shrine requires a permit, (Dkt. No. 30, Attach. 2 at 10), but the CORC noted that "the need for a shrine permit was discontinued in 2010," (Dkt. No. 30, Attach. 3 at 8).  The CORC also explained that "a shrine shall not exceed 1' x 1' and 1' in height," "[t]he material from which the shrine is constructed may consist of normally allowable items . . . excluding any food which is subject to spoilage," a shrine "shall not include any items which are contraband, can be used as a weapon[,] or constitute a threat to the safety and security of the facility," and a shrine "may not be placed on top of cell furnishings."  (*Id.*; Defs.' SMF ¶ 22.)

[11] The decisions of the IGRC and the superintendent for this grievance are not in the record.

5

special meals for Santeria" and requested that nine additional religious dates be added to the special food calendar.  (Dkt. No. 35, Attach. 8.)  The CORC denied the grievance, noting that it "has not been presented with any compelling reason to revise the current calendar," which provided for two holiday meals for Santeria.  (Dkt. No. 35, Attach. 19.)

## B.   Procedural History

Gonzalez filed the instant action *pro se* in November 2014.  (Compl.)  About a month later, while this action was pending, Gonzalez was discharged from DOCCS' custody.  (Dkt. No. 9 at 2.)  Under 42 U.S.C. § 1983, Gonzalez asserted (1) a First Amendment free exercise claim, (Compl. ¶¶ 36-38); (2) an Eighth Amendment claim, (*id.* ¶ 40); (3) an equal protection claim under the Fourteenth Amendment, (*id.* ¶¶ 42-45); and (4) a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), (*id.* ¶¶ 30, 45(B),(H)).  In a prior Decision and Order, the court dismissed Gonzalez's Eighth Amendment claim, RLUIPA claim, and all claims against defendants besides Morris and Barton.  (Dkt. No. 9 at 15-16.)

Counsel appeared on behalf of Gonzalez in October 2015, (Dkt. No. 25), and discovery was reopened, (Dkt. Nos. 26-29). Pending is the remaining defendants' motion for summary judgment. (Dkt. No. 30.)

### III. Standard of Review

The standard of review pursuant to Federal Rule of Civil Procedure 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

Defendants make three arguments for summary judgment: (1) Gonzalez failed to exhaust administrative remedies for his equal protection claim, (Dkt. No. 30, Attach. 7 at 2-6; Dkt. No. 40 at 1-3); (2) Gonzalez's First Amendment free exercise claim fails as a matter of law, (Dkt. No. 30, Attach. 7 at 7-14); and (3) defendants are entitled to qualified immunity, (*id.* at 14-15). The court addresses each of these in turn.

### A. Exhaustion of Gonzalez's Equal Protection Claim

The Prison Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983, or

any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).[12]  This PLRA exhaustion requirement

"applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 532

(2002).  "[P]risoners must complete the administrative review process in

accordance with the applicable procedural rules . . . that are defined not by

the PLRA, but by the prison grievance process itself."  *Jones v. Bock*, 549

U.S. 199, 218 (2007) (internal quotation marks and citation omitted).  This

exhaustion requirement is mandatory.  *See Ross v. Blake*, 136 S. Ct. 1850,

1856-57 (2016).[13]  New York "has a regular three-tiered process for

adjudicating inmate complaints: (1) the prisoner files a grievance with the

[IGRC], (2) the prisoner may appeal an adverse decision by the IGRC to

the superintendent of the facility, and (3) the prisoner then may appeal an

adverse decision by the superintendent to the [CORC]."  *Espinal v. Goord*,

---

[12] § 1997e(a) is applicable because Gonzalez was a confined prisoner at the time he filed his lawsuit.  *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (collecting cases).

[13] *Ross* sets forth situations in which administrative remedies are not "available" such that the bar in § 1997e(a) would not apply.  *See Ross*, 136 S. Ct. at 1859-60.  But that is not at issue here.  (*See generally* Dkt. No. 34.)

558 F.3d 119, 125 & n.3 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5).

Here, defendants concede that Gonzalez exhausted his claim regarding the limit of one bead strand in SHU, his shrine claim, and his claim regarding the denial of matches or a lighter with respect to the First Amendment.  (Dkt. No. 30, Attach. 7 at 6.)  Defendants argue that Gonzalez's equal protection claim regarding matches or a lighter is barred as unexhausted because he did not allege that Native American prisoners receive preferential treatment until his appeal statement to the CORC.  (*Id.*; Dkt. No. 40 at 1-3.)  Gonzalez contends that equal protection is a legal theory that did not need to be explicitly stated in his grievance.  (Dkt. No. 34 at 12-14.)

"In order to exhaust [a grievance] . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."  *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  "As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming."  *Id.* (internal quotation marks and citation omitted).

Although the Second Circuit "has found it appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006).[14]

Here, Gonzalez filed a grievance that he was denied matches or a lighter to burn offerings. (Dkt. No. 30, Attach. 2 at 7.) He did not articulate that Native Americans are accommodated in such a manner until his appeal statement to the CORC, (*id.* at 7, 9-10), and allegations brought up for the first time in an appeal to the CORC are not properly exhausted.[15] However, equal protection is a legal theory that Gonzalez did not need to articulate in his grievance. *Cf. Gomez v. United States*, Case No. 13-cv-946, 2016 WL 3458216, at *4 (S.D. Ill. June 24, 2016) (holding equal protection claim exhausted where prisoner grieved denial of medical care

---

[14] In their summary judgment memorandum, defendants emphasize that this is a "represented prisoner [Section] 1983 action." (Dkt. No. 30, Attach. 7 at 1.) But Gonzalez filed the grievance at issue *pro se*. (Defs.' SMF ¶ 1.) As far as reviewing the sufficiency of that grievance in the context of exhaustion, it does not matter that Gonzalez is now represented by counsel. *See Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 415 n.4 (N.D.N.Y. 2005).

[15] *See, e.g.*, *Crichlow v. Fischer*, 9:17-cv-00194, 2017 WL 6466556, at *15 n.10 (N.D.N.Y. Sept. 5, 2017), *report and recommendation adopted by* 2017 WL 6459512 (N.D.N.Y. Dec. 18, 2017); *Holmes v. LeClair*, No. 9:09–CV–0437, 2012 WL 5880360, at *8 (N.D.N.Y. Oct. 11, 2012), *report and recommendation adopted by* 2012 WL 5880690 (N.D.N.Y. Nov. 21, 2012).

but did not mention race, because equal protection is a legal theory).

Gonzalez needed only to object intelligibly to some asserted shortcoming,

which he did when he grieved that he was denied matches or a lighter for

religious purposes.  *See Johnson*, 380 F.3d at 697; *Simmons v. Robinson*,

No. 07 Civ. 7383, 2011 WL 31066, at *4 (S.D.N.Y. Jan. 4, 2011) ("[A] claim

may be exhausted when it is closely related to, but not explicitly mentioned

in an exhausted grievance.") (citing *Espinal*, 558 F.3d at 128).  Moreover,

Gonzalez's grievance was not so vague as to preclude prison officials from

taking appropriate measures to resolve the complaint internally.[16]  *Cf.*

*Brownell*, 446 F.3d at 310-11.

Courts in the Second Circuit have noted that the claim brought in

federal court and the grievance filed in prison "must be predicated on the

same injury."  *Crichlow v. Fischer*, 9:17-cv-00194, 2017 WL 6466556, at

*14 (N.D.N.Y. Sept. 5, 2017), *report and recommendation adopted by* 2017

---

[16] This is borne out by the fact that Adirondack Correctional Facility investigated
Gonzalez's grievance regarding the denial of matches or a lighter.  (Dkt. No. 30, Attach. 2 at
12.)  Although the investigator was not explicitly tipped off to the allegation that Native
Americans were accommodated, such an official investigating the grievance could reasonably
be expected to explore such matters. *Cf. Turner v. Goord*, 376 F. Supp. 2d 321, 325
(W.D.N.Y. 2005).  The court would be less inclined to find as such if defendants had set forth
facts that rebutted Gonzalez's assertion that Native Americans were treated more favorably,
but defendants did not do so.  In fact, Barton testified at his deposition that Native Americans
were given a special accommodation with regard to lighting herbs. (Dkt. No. 35, Attach. 5 at
3-5.)  As such, it is difficult to believe that the investigator did not have the opportunity to learn
about the alleged accommodation for Native Americans. *See Espinal*, 558 F.3d at 127.

WL 6459512 (N.D.N.Y. Dec. 18, 2017); *Johnson v. Annucci*, No.

15-cv-3754, 2016 WL 3847745, at *4 (S.D.N.Y. July 7, 2016); *see Rentas*

*v. Nason*, No. 09 Civ. 5528, 2010 WL 3734086, at *1 (S.D.N.Y. Sept. 22,

2010).  That is true here; whether tied to equal protection or some other

legal theory, the underlying injury—that Gonzalez could not use matches or

a lighter for religious purposes—is the same in both the instant lawsuit and

his exhausted grievance.

Accordingly, in light of the parties' arguments, the factual record, and

the governing law, Gonzalez exhausted his equal protection claim.[17]

## B.   Gonzalez's First Amendment Claim

Gonzalez exhausted the following First Amendment free

exercise claims: his inability to build a shrine, (Dkt. No. 30, Attach. 3 at 8),

the denial of matches or a lighter to burn offerings, (*id.*), the limit on the

number of bead strands that he was allowed to wear, (*id.* at 6), and his

request for additional religious meals for Santeria, (Dkt. No. 35, Attach. 19

at 2).  Although Gonzalez references other requests and grievances, (Dkt.

---

[17] Defendants did not move for summary judgment based on the merits of Gonzalez's equal protection claim.  (*See generally* Dkt. No. 30, Attach. 7; Dkt. No. 40.)

No. 34 at 2-5), those four are the only grievances in the record that he exhausted by appealing to the CORC.  *See supra* Part II.A.[18]

### 1.   Request for Additional Religious Meals

Defendants argue that despite filing a grievance requesting additional religious meals, Gonzalez never raised such a claim in his complaint.  (Dkt. No. 30, Attach. 7 at 2 n.2.)  Gonzalez did not respond to this argument in his opposition.  (*See generally* Dkt. No. 34.)  As defendants' argument is facially meritorious, Gonzalez's failure to respond is deemed as consent to summary judgment on this claim.[19]  *See* N.D.N.Y. L.R. 7.1(b)(3); *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 222 (N.D.N.Y. 2008).  Indeed, defendants' argument not only meets the modest burden of being facially

---

[18] This is consistent with Gonzalez's articulation of his claims in his opposition to summary judgment: "Gonzalez grieved about his beads, the meals, and permission to build a shrine, as well as possess candles, lighters[,] or matches."  (Dkt. No. 34 at 5.)  To the extent that Magistrate Judge David E. Peebles suggested that failure to train was at issue in this case, (Dkt. No. 23 at 3), Gonzalez did not exhaust such a claim, (Dkt. No. 34 at 5).  This is consistent with the fact that Gonzalez did not mention a failure to train anywhere in his opposition, (*see generally* Dkt. No. 34), or in his statement of contested facts, (*see generally* Dkt. No. 39).  Thus, to the extent that Gonzalez raised a failure to train claim in his complaint, the court grants summary judgment in favor of defendants on that claim as well.  *See Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (holding defendant entitled to summary judgment where plaintiff fails to come forth with evidence on an essential element of a claim for which plaintiff bears burden of proof).

[19] Technically, defendants argue that because a claim regarding meals was never raised in the complaint, "[it] is not part of the lawsuit."  (Dkt. No. 30, Attach. 7 at 2 n.2.)  To the extent that such a claim is part of the lawsuit, the court construes defendants' argument as one for summary judgment.

meritorious, *see Jackson*, 549 F. Supp. 2d at 222, but it is also

persuasive.[20]

### 2.    Bead Strand Limitations

"[A]lthough prisoners do not abandon their constitutional rights at the

prison door, [l]awful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the

considerations underlying our penal system[.]"  *Salahuddin v. Goord*, 467

F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citation

omitted).  Thus, "a challenged prison regulation is judged under a

reasonableness test less restrictive than that ordinarily applied: a

regulation that burdens a protected right passes constitutional muster if it is

reasonably related to legitimate penological interests."  *Id.* (internal

quotation marks and citation omitted).[21]

---

[20] It is seemingly an open question whether a *pro se* complaint should be treated liberally when a litigant subsequently becomes represented by counsel.  *See Braphman-Bines v. N.Y.C. Police Dep't*, No. 03 Civ. 10207, 2005 WL 22843, at *2 (S.D.N.Y. Jan. 3, 2005).  But the complaint never mentions meals, (Compl.), so even if construed "to raise the strongest arguments that [it] suggest[s]," *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted), it is difficult to see how such a claim was raised.  Moreover, Gonzalez's opposition—filed well after he obtained counsel—only briefly mentions his grievance regarding meals and makes no argument whatsoever regarding such a claim.  (Dkt. No. 34 at 3, 5.)  Gonzalez also failed to set forth any facts regarding meals in either his response to defendants' statement of material facts, (Dkt. No. 38), or his own statement of contested facts, (Dkt. No. 39).

[21] An official action such as "[a]n individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise."  *Salahuddin*, 467 F.3d at 274 n.4.

> Courts must evaluate four factors in making the reasonableness determination: [1] whether the challenged regulation . . . has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Id.* (internal footnote omitted).

"The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Id.* at 274-75. "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these [articulated] concerns were irrational." *Id.* at 275 (internal quotation marks and citation omitted).

Although the Second Circuit has not decided whether the substantial burden test remains viable, *see Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014), here defendants do not contest that Gonzalez satisfies that threshold element. (Dkt. No. 30, Attach. 7 at 8-14.) Even assuming a substantial burden exists, however, limiting inmates in SHU to one bead strand is reasonably related to legitimate penological interests of security and safety by preventing possible suicides or other serious self-harm by inmates left alone under periodic observation twenty-three hours a day.

(*Id.* at 9-10, 12-13.)  The court accords defendants "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), even in the context of claimed infringement on sincere religious belief, *see Jolly v. Coughlin*, 76 F.3d 468, 475-76 (2d Cir.1996).

The second factor—whether prisoners have alternative means of exercising the burdened right—supports this reasonableness determination.  Allowing one bead strand to be worn demonstrates that not all means of expression are denied.  (Dkt. No. 30, Attach. 7 at 12); *see Williams v. Fisher*, No. 9:11–CV–379, 2015 WL 1137644, at *27 (N.D.N.Y. Mar. 11, 2015) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987)).  The third factor also weighs in defendants' favor; a prisoner in SHU allowed to have multiple bead strands who committed suicide or self-harm would have serious consequences on prisoners (their health and safety), guards (increased tensions between guards and prisoners), and resources (increased burden on medical staff).  (Dkt. No. 30, Attach. 7 at 12-13.)  Finally, as for the fourth factor, "[t]he burden is on the prisoner challenging the regulation, not on the prison officials, to show that there are

16

obvious, easy alternatives to the regulation." *Hamilton v. Smith*, No.

9:06–CV–0805, 2009 WL 3199520, at *6 (N.D.N.Y. Sept. 30, 2009)

(internal quotation marks and citation omitted).  Gonzalez has not met that

burden because he did not offer any alternatives, let alone any obvious,

easy ones.  (Dkt. No. 34 at 14-17.)

Gonzalez does not provide any analysis of how the relevant factors

show that the limitation is unreasonable.  (*Id.*)  Instead, he argues that

defendants do not "explain the difference in potential self-harm between

permitting one strand of beads, as they do, and several strands of beads."

(*Id.* at 17.)  But this argument does not suffice to meet Gonzalez's burden

to show that defendants' articulated concerns are irrational.  *See*

*Salahuddin*, 467 F.3d at 275.  As explained above, defendants' safety and

security concerns are rational, and one can readily imagine strands of

beads tied together posing a higher risk than one strand of beads.

Gonzalez's only other argument is that "a prisoner bent on self-harm and

suicide already has more than what he needs to kill himself in the form of

prison linens, such as bed sheets."  (Dkt. No. 34 at 17.)  Not only is this

argument made out of whole cloth because it has no support in the factual

record, but it is also unpersuasive because it fails to rebut defendants'

analysis of the relevant factors.

As for the limitation of three bead strands in general population,

Gonzalez did not contest the fact that he "was never in general population

at Upstate [Correctional Facility] since he was always housed in SHU."

(Defs.' SMF ¶ 6.)  Gonzalez was not affected by the limitation and thus has

no standing to claim that it violated his rights.  *See Bordell v. Gen. Elec.*

*Co.*, 922 F.2d 1057, 1059-61 (2d Cir. 1991); *Smith v. Marchewka*, 519 F.

Supp. 897, 899 (N.D.N.Y. 1981).[22]

### 3.    Shrine Restrictions and Matches/Lighter Grievance

There is no dispute that Gonzalez was authorized to build a shrine

under certain restrictions.  (Defs.' SMF ¶¶ 17-19, 22, 29.)  Those

restrictions included that any shrine had to be limited in size, could not

consist of food subject to spoilage, and could "not include any items which

are contraband, can be used as a weapon[,] or constitute a threat to the

---

[22] Even if Gonzalez had standing, "the security concern . . . that when an inmate wears more than three strands of beads, they cannot be concealed and a display of color[ed] beads may signal gang activity," (Dkt. No. 30, Attach. 7 at 9-10), is reasonably related to legitimate penological interests.  *See Salahuddin*, 467 F.3d at 274.  Contrary to Gonzalez's argument that three is an arbitrary number, (Dkt. No. 34 at 15-16), a religious review committee arrived at the limitation after discussion and a demonstration of how many bead strands could be concealed, (Dkt. No. 30, Attach. 6 at 24-27, 31).  In any event, Gonzalez would not meet his burden of showing that defendants' articulated concerns are irrational, even if he had standing. *See Salahuddin*, 467 F.3d at 275.

18

safety and security of the facility." (Dkt. No. 30, Attach. 3 at 8.)  Such restrictions are reasonably related to legitimate penological interests. *See Salahuddin*, 467 F.3d at 274.  Defendants' analysis of the relevant factors is persuasive, (Dkt. No. 30, Attach. 7 at 13), especially in light of the court's mandate that it should not "substitute [its] judgment on . . . difficult and sensitive matters of institutional administration . . . for the determinations of those charged with the formidable task of running a prison." *O'Lone*, 482 U.S. at 353 (internal quotation marks and citation omitted).  In opposition, Gonzalez fails to provide a counterargument or any analysis of the relevant factors and barely mentions his shrine claim.  (Dkt. No. 34 at 5, 15.)

The court also agrees with defendants that prohibiting inmates from possessing matches or lighters is reasonably related to legitimate penological interests. *See Salahuddin*, 467 F.3d at 274.  Again, the court finds defendants' analysis of the relevant factors persuasive.  (Dkt. No. 30, Attach. 7 at 13-14.)  And, as with his shrine claim, Gonzalez[23] offers no counterargument or analysis of the relevant factors.  (*See generally* Dkt. No. 34.)  Moreover, Gonzalez did not contest the fact that Adirondack Correctional Facility was granted waivers to prohibit matches and lighters.

---

[23] The court reiterates that Gonzalez was represented when his opposition was filed and continues to have the benefit of counsel.  (Dkt. Nos. 25, 34.)

(Defs.' SMF ¶¶ 23, 30.)  Despite that, Gonzalez confusingly argues that defendants "did not allege an affirmative defense regarding the waiver of the rules at [Adirondack Correctional Facility] . . . because of the safety considerations of the facility" and thus this argument cannot be considered. (Dkt. No. 34 at 7 n.3.)  But Gonzalez offers zero support for this proposition and does not explain why such a fact had to be alleged as an affirmative defense in order to be considered.[24]

The court thus grants summary judgment on Gonzalez's First Amendment claims in defendants' favor.

## C.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. (Dkt. No. 30, Attach. 7 at 14-15.)  However, their argument is generalized and conclusory.  (*Id.*)  With no explanation, defendants state that they "followed DOCCS['s] constitutional policies and acted reasonably at all times."  (*Id.* at 15.)  This is insufficient to demonstrate that it was reasonable for defendants to believe that their conduct did not violate

---

[24] Gonzalez also argues that the first time he learned of the waivers was in defendants' summary judgment memorandum.  (Dkt. No. 34 at 15 n.7.)  As an initial matter, that is incorrect, as the CORC decision explicitly informed Gonzalez that "the facility administration has been granted waivers prohibiting inmates from possessing matches or lighters."  (Dkt. No. 30, Attach. 3 at 8.)  Second, Gonzalez did not contest that fact or the fact that such waivers had been granted.  (Defs.' SMF ¶¶ 23, 30.)  In any event, the court fails to see the relevance of when Gonzalez learned of the waiver.

Gonzalez's constitutional rights and that no rational jury could conclude otherwise.  *See LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998). Even when officials follow an established prison policy, their entitlement to qualified immunity depends on whether a reasonable official might have believed that the challenged regulation was lawful in light of the legitimate penological interests supporting the regulation, which is something defendants fail to address.  *See Barnes v. Furman*, 629 F. App'x 52, 57 (2d Cir. 2015).

Moreover, regarding Gonzalez's equal protection claim—the only claim that survives the instant summary judgment motion—the court cannot say as a matter of law that it was objectively reasonable for defendants to believe that denying Gonzalez an accommodation afforded to Native Americans was constitutional.  *See id.* at 56-57.  And the equal protection rights of prisoners are clearly established.  *See, e.g.*, *Barnes v. Ross*, 926 F. Supp. 2d 499, 509-10 (S.D.N.Y. 2013); *Tavares v. Amato*, 954 F. Supp. 2d 79, 101 (N.D.N.Y. 2013).  Defendants bear the burden of proof for their qualified immunity defense, *see Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012), a burden that their lip-service argument fails to meet.

# V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No.

30) is **GRANTED IN PART** and **DENIED IN PART** as follows:

>   **DENIED** as to Gonzalez's equal protection claim
>
>   (Compl. ¶¶ 42-45); and
>
>   **GRANTED** in all other respects; and it is further

**ORDERED** that this case is now deemed trial ready and a trial

scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 15, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge

22