**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

MICHAEL GONZALEZ,

                                        Plaintiff,           9:14-cv-01438 (BKS/DEP)

v.

CHERYL MORRIS and STAN BARTON,

                                        Defendants.

**Appearances:**

*For Plaintiff:*
Noah A. Kinigstein
Law Office of Noah A. Kinigstein
315 Broadway, Suite 200
New York, NY 10007

*For Defendants:*
Barbara D. Underwood
Attorney General of the State of New York
Brian W. Matula
Ryan L. Abel
Assistant Attorneys General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Michael Gonzalez, a practitioner of Santeria, brings this action under 42 U.S.C. § 1983, alleging that Defendants Cheryl Morris, then Director of Ministerial, Family, and Volunteer Services at the New York State Department of Corrections and Community Supervision ("DOCCS"), and Stan Barton, then Deputy Superintendent for Programs at Adirondack Correctional Facility ("ADK"), violated his rights under the Fourteenth

Amendment's Equal Protection Clause by intentionally treating him differently, with regard to religious practice, than similarly situated Native American inmates at ADK. Presently before the Court are the parties' respective motions in limine (Dkt. Nos. 56, 65) concerning various evidentiary matters. For the reasons discussed below, Plaintiff's motion is granted in part and denied in part, and Defendants' motion is granted in part and denied in part.

II. **DISCUSSION**

    A. **Plaintiff's Motion in Limine to Exclude Evidence of His Prior Convictions**

Plaintiff seeks to preclude Defendants from questioning Plaintiff or otherwise introducing evidence concerning his prior convictions, arrests, and time spent in custody. (*See* Dkt. No. 56-7, at 4). Specifically, Plaintiff seeks to exclude evidence of: (i) his guilty plea to criminal possession of a forged instrument in the second degree[1] (N.Y. Penal Law § 170.25) in 2012; (ii) his guilty plea to attempted promoting of prison contraband in the first degree (N.Y. Penal Law § 110-205.25(2)) while incarcerated; and (iii) his guilty plea to criminal possession of a forged instrument in the second degree in 2016. (Dkt. No. 56-7, at 6–7, 9 n.1; Dkt. No. 56-3, at 2; Dkt. No. 56-6, at 2). Defendants, in their opposition, focus on the forged instrument possession convictions and do not address the prison contraband conviction. As Plaintiff's motion is unopposed as to exclusion of the latter crime, the Court grants Plaintiff's request to preclude Defendants from questioning Plaintiff or introducing evidence about the prison contraband conviction.

With regard to exclusion of the forged instrument possession convictions, Plaintiff argues that "it is unclear" whether the crime of possession of a forged instrument in the second degree "satisfies the requirements of Federal Rule of Evidence 609(a)(2), in that it consisted of a

---

[1] Although Plaintiff's own motion in limine does not specify the degree of the crime, Plaintiff's opposition to Defendants' motion in limine refers to his "convictions for criminal possession of a forged instrument in the second degree." (Dkt. No. 69, at 5).

2

dishonest or false act as required by said section." (Dkt. No. 56-7, at 7). That argument is meritless. Rule 609(a)(2) provides that, for the purpose of "attacking a witness's character for truthfulness," "evidence of a criminal conviction . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Under New York law, a "person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in [N.Y. Penal Law § 170.10]." N.Y. Penal Law § 170.25. A "forged instrument" is "a written instrument which has been falsely made, completed or altered." *Id.* § 170.00(7). Therefore, possession of a forged instrument in the second degree under New York law requires proof (or admission) of a dishonest act or false statement, and is clearly admissible for impeachment under Rule 609(a)(2). *See Boykin v. W. Express, Inc.*, No. 12-cv-7428, 2016 WL 8710481, at *7 (S.D.N.Y. Feb. 5, 2016) (finding it "clear that Plaintiff's prior conviction [for possession of a forged instrument] is for a crime involving dishonesty"); *cf.* Fed. R. Evid. 609 advisory committee's notes to 1990 amendments (concluding that the Report of the House and Senate Committee Conference Committee "provides sufficient guidance to trial courts" with its statement that by "the phrase 'dishonesty and false statement,' the Conference means . . . offense[s] in the nature of *crimen falsi*, commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.").

In the event the convictions for possession of a forged instrument are admissible, Plaintiff requests that the information presented to the jury be limited to the date of the convictions and the length of the sentence because the prejudice resulting from any questioning about the

3

underlying facts outweighs any probative value. (Dkt. No. 56-7, at 7–8). Defendants do not address that specific request in their opposition. Evidence of a conviction involving dishonesty or a false statement "must be admitted, with the trial court having no discretion." *United States v. Bumagin*, 136 F. Supp. 3d 361, 375 (E.D.N.Y. 2015) (quoting *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977)). "The presumption under Rule 609(a)(2) . . . is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the 'evidence' that is to be admitted for impeachment purposes." *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005); *see also* 4 Jack B. Weinstein et al., Weinstein's Federal Evidence § 609.20[2], at 609-61 to -62 (2d ed. 2018) ("It is usually considered prejudicial to elicit the specific details of a crime that does not bear directly on the truth-telling trait."). Given Defendants' failure to object to Plaintiff's request, and the minimal probative value of information concerning the underlying facts, which is substantially outweighed by the potential prejudice of an inquiry into those facts, the Court will permit Defendants to impeach Plaintiff by using only the essential facts of his convictions for possession of a forged instrument, e.g., the statutory name of each offense, the date of conviction, and the sentence imposed.

  **B. Defendants' Motion in Limine**

    **1. Evidence of Other Harms**

In their motion in limine, Defendants contend that, purportedly because of a prior ruling that is "law of the case" and by operation of the exhaustion doctrine, the sole claim to be tried—Plaintiff's equal protection claim—is limited in scope to the issue of "[w]hether defendants deprived plaintiff of the ability to use matches or lighters for religious purposes in his cell at Adirondack C.F. while permitting Native American inmates at Adirondack C.F. to use matches or lighters for ritual purposes in their cells." (Dkt. No. 65, at 5). Plaintiff responds that no prior

4

ruling of the Court thus "limit[s] the plaintiff's equal protection claim to lighters and matches" and that "he filed letter after letter" and "argued that he was not being treated in a similar manner to the Native Americans" with respect to "obtain[ing] herbs and other things to burn," "set[ting] up an altar or shrine in a similar manner to the Native Americans," and "us[ing] lighter and matches to burn anything." (Dkt. No. 69, at 4–5).

Defendants did not address the scope of the exhausted equal protection claim in their summary judgment motion; instead Defendants argued that Plaintiff failed to exhaust his administrative remedies for "the entirety of the Equal Protection claim." (Dkt. No. 30-7, at 4). Judge Sharpe disagreed, ruling that Plaintiff did not need to articulate the legal theory of equal protection in his grievance, and that the facility investigated Plaintiff's grievance regarding the denial of matches or a lighter.[2] (Dkt. No. 42, at 12). Explaining that a properly exhausted claim "must be predicated on the same" injury as that presented in the grievance, (*id.* at 11 (quoting *Crichlow v. Fischer*, No. 17-cv-194, 2017 WL 6466556, at *14 (N.D.N.Y. Sept. 5, 2017))), Judge Sharpe concluded that Plaintiff exhausted his equal protection claim because "the underlying injury—that Gonzalez could not use matches or a lighter for religious purposes—is the same in both the instant lawsuit and his exhausted grievance," (*id.* at 12). Contrary to Defendants' framing of the issue, Judge Sharpe did not *rule* that Plaintiff had only exhausted his equal protection claim with respect to his "ability to use matches or lighters for religious purposes *in his cell*." (Dkt. No. 65, at 5 (emphasis added)).[3]

---

[2] Plaintiff filed several grievances, (see Dkt. No. 42, at 3–6), but as Judge Sharpe's decision shows, the only grievance in the record that raises equal protection issues is Grievance No. ADK-4292-14, (Dkt. No. 30-2, at 7).

[3] The Court notes that the officials at ADK did not read Plaintiff's grievance so narrowly. The investigation was not focused on what the Plaintiff could do in his cell. The investigative report categorically denied his request for matches and a lighter. (*See* Dkt. No. 30-2 at 12 ("candles cannot be lit and burned, as lighters and matches are considered contraband at this facility")). And the Superintendent described Plaintiff's grievance as challenging the facility's ability "to meet his needs to practice his religion." (Dkt. No. 30-2 at 10).

5

Plaintiff's properly exhausted equal protection claim revolves around whether he was treated less favorably than Native Americans at ADK with respect to his need to burn offerings.[4] Accordingly, the Court denies Defendants' request to exclude evidence relevant to the equal protection claim to the extent circumscribed above.

### 2. Evidence on Failure to Train

In his Complaint, Plaintiff alleges upon information and belief that "Cheryl Morris is improperly training subordinates regarding the practices of Santeria shrines/altars, beads and customs." (Dkt. No. 1, ¶ 12). Defendants seek to preclude Plaintiff from seeking damages or presenting any evidence concerning any failure-to-train "claim." (Dkt. No. 65, at 6). In his discussion of what First Amendment free exercise claims Plaintiff had exhausted, Judge Sharpe noted:

> To the extent that Magistrate Judge David E. Peebles suggested that failure to train was at issue in this case, Gonzalez did not exhaust such a claim. This is consistent with the fact that Gonzalez did not mention a failure to train anywhere in his opposition or in his statement of contested facts. Thus, to the extent that Gonzalez raised a failure to train claim in his complaint, the court grants summary judgment in favor of defendants on that claim as well.

(Dkt. No. 42, at 13 n.18 (citations omitted)). In his pretrial briefing, Plaintiff argues that he should be able to present evidence and seek damages on a failure-to-train "claim" because Defendants did not move for summary judgment on that "claim." (Dkt. No. 69, at 9–10). At the final pretrial conference and in supplemental briefing, (Dkt. No. 75), Plaintiff shifted gears and advanced a new argument—that the failure-to-train "claim" has an equal protection component—i.e., that Morris did not train subordinates on treating different religious practices

---

[4] The Court agrees with Defendants that two of the issues raised by Plaintiff in his trial brief—limiting him to a certain number of Santeria beads, and refusing him items to build an altar (Dkt. No. 57, at 5–7; Dkt. No. 68, at 4)—are not within the scope of the exhausted equal protection claim, which implicates unequal treatment compared to other religious practitioners. Plaintiff cannot use his trial brief to raise new issues (or claims). (*See* Dkt. No. 57, at 6 n.1 (belatedly attempting to assert a new due process claim)).

6

equally. In response, Defendants argue that such a claim can only be brought against "a governmental entity." (Dkt. No. 76, at 3).

Given the parties' arguments, a point of clarification is needed on the nature of failure-to-train allegations in § 1983 actions. In a suit against a municipality—which is not the case here—a failure-to train allegation implicates the conduct of a municipality as an entity and may therefore be a basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); however, it does not constitute a separate claim. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."). In a suit against government officers in their individual capacities—as in this case—a failure-to-train allegation is relevant to the personal involvement of a supervisor and may therefore be a basis for supervisory liability. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (holding that a supervisor's personal involvement may be found under § 1983 where the supervisor (1) participated directly in the alleged constitutional violation, (2) failed to remedy a wrong after learning of the violation through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, (4) was grossly negligent in supervising the subordinates who caused the unlawful condition or event, or (5) demonstrated deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place); *see Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 347 (S.D.N.Y. 2011) (same).

On summary judgment, Judge Sharpe dismissed Plaintiff's entire First Amendment free exercise claim on the merits. (Dkt. No. 42, at 20). Absent any underlying violation of the First Amendment, Defendant Morris cannot be liable for failure to train in connection with that claim. *See White v. Williams*, No. 12-cv-1775, 2016 WL 4006461, at *15 (N.D.N.Y. June 22, 2016) ("Where there is no underlying violation, there can be no liability for failure to train or supervise."), *report-recommendation adopted by* 2016 WL 4005849 (N.D.N.Y. July 25, 2016). Judge Sharpe, on the other hand, determined that Plaintiff had exhausted his equal protection claim with regard to the use of a lighter or matches. (Dkt. No. 42, at 12). But Defendants did not move for summary judgment on the substantive merits of that claim, including the issue of Defendant Morris' personal involvement in violating Plaintiff's equal protection rights. (*See id.* at 12 n.17). It is not clear what failure-to-train evidence Plaintiff seeks to admit on the exhausted equal protection claim; Plaintiff did not raise any such issue in his summary judgment briefing. Therefore, the Court reserves ruling on this issue until trial.

### 3. Evidence of Alleged Acts by Barton Prior to September 2014

Defendants argue that no evidence predating September 2014 may be used against Defendant Barton because he "took over as the Deputy Superintendent for Programs" at ADK in September 2014 and the "record is devoid of anything to suggest that Barton was personally involved in any alleged constitutional deprivations that occurred before September 2014." (Dkt. No. 65, at 6). Defendants further point out that the only grievance at issue in this case was filed in March 2014 and decided by DOCCS' Central Office Review Committee ("CORC") in July 2014. At the final pretrial conference, Plaintiff indicated he would not seek to introduce evidence of Barton's liability for acts before September 2014. The Court thus denies Defendants' request as moot.

8

## 4. Father Lamore's Declaration

On July 15, 2016, Father Lamore, who was the chaplain at ADK during Plaintiff's incarceration, signed a declaration that Plaintiff filed in opposition to Defendants' motion for summary judgment. (*See* Dkt. No. 37). Father Lamore has since died. (*See* Dkt. No. 57, at 2). Plaintiff has indicated that he wishes to introduce the declaration at trial as the statement of an unavailable witness under Rule 804(a)(4). (*See id.*). In their motion in limine, (Dkt. No. 65, at 8–9), Defendants move to exclude the declaration of Father Lamore (Dkt. No. 37) as inadmissible hearsay. Further, in their opposition to Plaintiff's motion in limine, Defendants argue that the statements in the Lamore declaration are immaterial and not probative of the facts in the case. (Dkt. No. 68, at 6–7). In response,[5] Plaintiff argues that the Lamore Declaration falls within the residual exception to the rule against hearsay. (Dkt. No. 57, at 2–3 (citing Fed. R. Evid. 804(b)(5), 807)).[6] Plaintiff argues that the Lamore Declaration is "probative on the truthfulness of Barton and concerns several significant material facts." (*Id.* at 4).

Rule 804(b) provides hearsay exceptions for certain statements made by an unavailable declarant, including, under specific conditions, the declarant's former testimony, his dying declarations, statements against interest, statements of personal or family history, and statements against a party that wrongfully caused the declarant's unavailability. *See* Fed. R. Evid. 804(b)(1)–(4), (6). The parties do not dispute that the Lamore Declaration fits none of these categories. Rule 807 provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804" if:

---

[5] Plaintiff presents his arguments in his trial brief, (Dkt. No. 57, at 2–4), which he cross-references in his opposition to Defendants' motion in limine, (Dkt. No. 69, at 6).

[6] Rule 804(b)(5) was transferred to Rule 807 in 1997. Fed. R. Evid. 807 advisory committee's note to 1997 amendments.

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a); *see also Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) ("To be admissible pursuant to the residual exception, the evidence must fulfill five requirements: trustworthiness, materiality, probative importance, the interests of justice and notice.").[7]

The parties initially focused their Rule 807 arguments on materiality and probativeness.[8] Plaintiff argues that the declaration addresses the material issue of his disparate treatment compared to Native Americans. (Dkt. No. 57, at 4). But the portion of the declaration that discusses Plaintiff's disparate treatment compared to Native Americans (paragraph 8) merely recounts what Plaintiff told Father Lamore—those statements are inadmissible hearsay within hearsay to the extent they are offered for their truth (i.e., to show that Plaintiff was treated less favorably than Native Americans). (*See* Dkt. No. 37, ¶ 8). That evidence is not "more probative on the point for which it is offered than any other evidence" that Plaintiff could obtain. Fed. R. Evid. 807(a)(3). Plaintiff can establish how Native Americans were treated at the facility with other evidence.

On the other hand, Father Lamore stated that he met with Defendant Barton to convey Plaintiff's needs and concerns (paragraphs 9 and 10). (*Id.* ¶¶ 9, 10). To the extent that Plaintiff proffers the declaration to show what Barton knew and how he acted or failed to act on that

---

[7] The proponent must also provide "reasonable notice of the intent to offer the statement and its particulars." Fed. R. Evid. 807(b). There is no dispute that Plaintiff provided sufficient notice when he indicated during the parties' June 5, 2018 telephonic conference with the Court that he would seek to introduce the Lamore Declaration at trial.

[8] Defendants initially assumed arguendo that the statements are trustworthy. (Dkt. No. 68, at 6). Defendants have never argued that admitting the declaration would be against the interests of justice.

knowledge, there would not be a double hearsay issue for that evidence. Indeed, not only do the embedded statements by Plaintiff, as relayed to Barton by Father Lamore, have a nonhearsay use (i.e., they would not be offered for their truth), but Father Lamore's account of his meetings with Barton could be evidence of material facts (i.e., notice to and personal involvement by Barton) for Rule 807 purposes. The Court finds that the declaration is offered as evidence of a material fact, and is highly probative.[9] Apart from suggesting that Plaintiff should have deposed Father Lamore when he was still alive, Defendants have failed to identify any other evidence that Plaintiff could obtain regarding notice to Barton. The Court therefore finds that the declaration is more probative on the point for which it is offered than any other evidence that Plaintiff could obtain through reasonable means. Fed. R. Evid. 807(a)(3).

The parties initially did not identify any trustworthiness issue regarding the admissibility of the declaration. Following the final pretrial conference, however, Defendants submitted a letter brief arguing that there are "no circumstantial guarantees of the trustworthiness of the contents" of the declaration because Defendants "have no knowledge of Father Lamore's mental condition at the time he signed the Declaration." (Dkt. No. 76, at 2). Defendants argue that they do not know whether Father Lamore was in good physical health or whether he was taking medications which may have affected his mental state, and assert that they had had no opportunity to depose or otherwise examine Father Lamore. (*Id.*).[10]

---

[9] Critically, Barton testified that he only "vaguely remember[ed] [Father Lamore] maybe talking about an inmate that was Santeria," (Dkt. No. 65-3, at 26). Barton also testified that he never spoke to Defendant Morris about Plaintiff's grievances, (Dkt. No. 65-3, at 12–13), which is in tension with Father Lamore's statement that that Barton told him he would speak with Morris, (Dkt. No. 37, ¶ 11).

[10] The Court notes that Defendants have not explained why they did not have "an opportunity" to depose or otherwise examine Father Lamore. The Court further notes that Defendants' arguments regarding trustworthiness are limited to speculation regarding Father Lamore's health and mental state. As explained further in this decision, the Court finds that Plaintiff has met his burden to establish the trustworthiness of the declaration.

11

The Court has considered the Defendants' belated argument regarding the trustworthiness of the declaration, and finds sufficient circumstantial guarantees of trustworthiness to support its admissibility. The Court notes that the statement was signed in 2016 under penalty of perjury by Father Lamore, who in 2014 was the coordinating chaplain at three correctional institutions in upstate New York, including ADK. (Dkt. No. 37, ¶¶ 2–3). Father Lamore stated in his affidavit that he was "the person inmates would contact if they had requests or needs or accommodations with the particular facility . . . in regards to practicing their religion." (*Id.* ¶ 5). Father Lamore further stated that he met with Plaintiff "at least five times" in fall 2014, that Plaintiff asked Father Lamore to convey to Defendant Barton the items and things Plaintiff felt he needed to practice Santeria, and that Father Lamore conveyed Plaintiff's needs and complaints to Defendant Barton. (*Id.* ¶¶ 7–10). Consistent with this information, the record reflects that officials at ADK repeatedly told Plaintiff to address his concerns with Father Lamore. (*See, e.g.*, Dkt. No. 30-2 at 12 (investigation report of grievance stating that Plaintiff "should address all religious concerns with the coordinating chaplain, as he has the resources to address all religious needs"); Dkt. No. 30-2, at 10 (Superintendent's denial of grievance stating that Plaintiff "is advised to address future similar concerns to the Coordinating Champlain for remedial action, if warranted")). It appears that Defendant Barton, as the Deputy Superintendent for Programs at ADK, would have been the appropriate person for Father Lamore to have conveyed Plaintiff's complaints. And the record reflects that, during his periods of incarceration, Plaintiff repeatedly complained about his inability to practice Santeria.

The Court recognizes that, as Defendants have not cross-examined Father Lamore and this is not a business record, the declaration does not have the circumstantial guarantees of trustworthiness of former testimony offered against a party who had an opportunity and similar

12

motive to develop the testimony (Fed. R. Evid. 804(b)(1)) or reports of regularly conducted business activity (Fed. R. Evid. 803(6)). But in the unique circumstances of this case involving a sworn statement by the chaplain responsible for conveying Plaintiff's complaints to authorities, the Court finds the declaration has equivalent circumstantial guarantees of trustworthiness. *See*, *e.g.*, *United States v. Morgan*, 385 F.3d 196, 208–09 (2d Cir. 2004) (finding letter written by a co-defendant to a boyfriend in the privacy of her hotel room trustworthy, and finding no error in its admission under Fed. R. Evid. 807).

In light of all of the above, the Court finds that admitting the declaration—as redacted to delete the last sentence in paragraph 8 of the declaration—in order to show what Barton knew based on his meetings with Father Lamore, will best serve the purposes of the Federal Rules of Evidence and the interests of justice under Rule 807. Accordingly, the Defendants' motion to exclude the declaration is denied.

### 5. Plaintiff's Prior Convictions

Defendants argue that evidence of Plaintiff's convictions for possession of a forged instrument are admissible for impeachment purposes. (Dkt. No. 65, at 7–8). As discussed above, the Court finds that the essential facts of these convictions are admissible impeachment material.

### 6. Evidence of Alleged Wrongdoing by DOCCS Since September 2016

Defendants seek to exclude as irrelevant evidence regarding any alleged wrongdoing by DOCCs or its personnel in connection with Plaintiff's incarceration starting in September 2016 for his second conviction for possession of a forged instrument. (Dkt. No. 65, at 9). As this case concerns Plaintiff's incarceration at ADK between March and December 2014, Defendants argue that "[a]ny allegations of current wrongdoing that began in September 2016 are irrelevant to anything that might have happened in 2014." (*Id.*). Defendants add that the point is made starker by the fact that Defendants do not serve at the facility where Plaintiff was incarcerated in 2016.

13

(*Id.*). Plaintiff responds that evidence of "the continued discrimination regarding practicing his religion" is "probative of Morris' continued refusal to accommodate him in regards to violations of his constitutional rights under the equal protection clause," and that "the fact that Morris and Barton are no longer at Franklin Correction Facility does not mean that they were not there when Mr. Gonzalez returned." (Dkt. No. 69, at 7).

The Court notes that evidence of subsequent acts may be relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2); *see Ismail v. Cohen*, 899 F.2d 183, 188–89 (2d Cir. 1990) (concluding that the district court did not abuse its discretion in admitting, under Rules 404(b), a civil rights complaint against a police officer as evidence that the police officer was involved in a subsequent similar incident to show "pattern, intent, and absence of mistake," and in weighing, under Rule 403, the risk of unfair prejudice against the evidence's probative value). *But see Asanjarani v. City of New York*, No. 09-cv-7493, 2011 WL 6811027, at *3, 2011 U.S. Dist. LEXIS 149234, at *6–7 (S.D.N.Y. Dec. 27, 2011) (finding, in a Title VII case, that a twenty-month gap between alleged acts of discrimination and "the ambiguous nature" of the subsequent alleged discriminatory behavior "negate[d] any residual evidentiary value it might have"). As the parties have not specified which post–September 2016 evidence is at issue and for what specific purpose Plaintiff will seek to introduce any such evidence, or the probative value of any such evidence in light of the defense, the Court will decide this matter in the context of trial.

### 7. Plaintiff's Requests for Injunctive and Declaratory Relief

Lastly, Defendants seek to preclude Plaintiff's requests for declaratory and injunctive relief as moot, given that Plaintiff was released from ADK in December 2014. (Dkt. No. 65, at 10). Indeed, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272

14

(2d Cir. 2006). Plaintiffs argues in response that his requests for prospective relief falls within the exception to mootness for disputes that are capable of repetition yet evading review. (Dkt. No. 69, at 7–8). That argument fails, however, because that exception applies only if "there is a reasonable expectation that the same complaining party will be subjected to the same action again," and the Supreme Court has "consistently refused to find" that this exception applies based upon a party's expectation of "violating lawful criminal statutes." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1541–42 (2018). There is nothing to suggest that there is a reasonable expectation that this controversy will recur as to Plaintiff. As the Court cannot discern any basis for prospective relief in this case, Defendant's request is granted.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 56) is **DENIED in part** and **GRANTED in part**; and it is further

**ORDERED** that Defendants' motion in limine (Dkt. No. 65) is **DENIED in part** and **GRANTED in part**.

**IT IS SO ORDERED.**

Dated: September 18, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge