**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL GONZALEZ,

                         Plaintiff,            9:14-cv-01438 (BKS/DEP)

v.

CHERYL MORRIS and STAN BARTON,

                         Defendants.

---

**Appearances:**

Noah A. Kinigstein
Office of Noah A. Kinigstein
315 Broadway, Suite 200
New York, NY 10007
*For Plaintiff*

Letitia A. James
Attorney General of the State of New York
Brian W. Matula
Ryan L. Abel
Assistant Attorneys General
The Capitol
Albany, NY 12224
*For Defendants*

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Michael Gonzalez, a practitioner of Santeria, brought this action under 42 U.S.C. § 1983, alleging that Defendants Cheryl Morris, then Director of Ministerial, Family, and Volunteer Services at the New York State Department of Corrections and Community Supervision ("DOCCS"), and Stan Barton, then Deputy Superintendent for Programs at Adirondack Correctional Facility ("ADK"), violated his rights under the Fourteenth

Amendment's Equal Protection Clause by intentionally treating him differently, with regard to religious practice, than similarly situated Native American inmates at ADK.[1] The case proceeded to a jury trial on September 24 and 25, 2018. The jury returned a verdict finding that Plaintiff failed to prove his claim by a preponderance of the evidence. (Dkt. No. 80). Presently before the Court is Plaintiff's motion for a new trial under Rules 51 and 59 of the Federal Rules of Civil Procedure. (Dkt. No. 89). Plaintiff argues that "the verdict for Defendants was against the clear weight of the evidence." (Dkt. No. 89-20, at 4). Plaintiff also argues that the Court erred in denying his request for an instruction that the jury could consider Defendants' failure "to engage in a good faith interactive process regarding an accommodation" for Plaintiff's practice of Santeria as evidence tending to show discrimination. (Dkt. No. 89-20, at 4, 24–25; Dkt. No. 78).[2] For the reasons discussed below, Plaintiff's motion is denied.

## II.    BACKGROUND

Plaintiff alleged that Defendants treated him less favorably than Native Americans at ADK when they denied his requests to burn religious offerings as part of his practice of Santeria. (Dkt. No. 1, ¶ 27; *see* Dkt. No. 42, at 4; Dkt. No. 77, at 6). At trial, Plaintiff testified, (Dkt. No.

---

[1] Plaintiff's other claims, including claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Eighth Amendment, and the Free Exercise Clause of the First Amendment, were dismissed before trial. (Dkt. Nos. 9, 42). As to the First Amendment free exercise claim arising from Plaintiff's practice of Santeria, the Court concluded that the restrictions governing shrines, the prohibition on possessing matches or lighters, and the bead-strand limitations were reasonably related to legitimate penological interests. (Dkt. No. 42, at 12–20). That left only Plaintiff's equal protection claim—that he was treated less favorably than Native Americans regarding his need to burn offerings—for trial.

[2] Plaintiff argues that the failure to so instruct the jury is evidence that the verdict was against the weight of the evidence, (Dkt. No. 89-20, at 24–25), but Plaintiff has moved for a new trial under Fed. R. Civ. P. 51 and 59, and the Court construes Plaintiff's assignment of error in the jury instructions as a separate argument for a new trial. Since Plaintiff properly requested but was denied that instruction at trial, he preserved his claim of error and may assign the Court's denial as error in his Rule 59 motion. *See* Fed. R. Civ. P. 51(d)(1)(B); *Henry v. Dinelle*, 929 F. Supp. 2d 107, 114 (N.D.N.Y. 2013) ("[T]o the extent any such motion for a new trial is premised to an objection to a jury instruction or verdict form, Fed. R. Civ. P. 51 requires the movant to have raised that objection before the jury retires, in order to preserve the objection."), *aff'd*, 557 F. App'x 20 (2d Cir. 2014).

85), and read parts of Defendants' deposition testimony into the record, (Dkt. No. 86).[3] Both Defendants Morris and Barton testified at trial. (Dkt. No. 87–88).

Plaintiff testified that "Native Americans [were] allowed to smudge[4] twice a day for fifteen minutes" and that many of his Santeria practices are similar to those of Native Americans. (Dkt. No. 85, at 12–13). These similarities include "[b]urning herbs, chanting, [and] invoking the spirits." (*Id*. at 13). Plaintiff asserted that he was denied the right to engage in such activities. (*Id*.). Because he was not allowed to practice his religion at ADK, Plaintiff consulted Father Victor Lamore, who was the chaplain for ADK. (*Id*. at 14). In a declaration read to the jury,[5] Father Lamore stated that Plaintiff asked him to speak with Defendant Barton and "request certain items and things he felt he needed to practice Santeria," such as "items he needed to burn during ceremonies." (P-27, ¶ 8; Dkt. No. 85, at 17). Also, according to his declaration, Father Lamore spoke to Barton about Plaintiff's "needs and complaints regarding practicing Santeria" and told Barton that he (Lamore) would be "responsible for both supervising the ceremonies and . . . securing the items" Plaintiff requested to practice Santeria. (P-27, ¶ 9). According to Plaintiff's testimony, Plaintiff spoke to Barton one time, and Barton said he "would not grant me anything" unless Plaintiff got a settlement or Morris "changed the policy for Santeria." (Dkt. No. 85, at 11, 15).[6]

---

[3] Citations to the exhibits admitted into evidence at trial are denoted as "P-" or "D-" followed by the exhibit number.

[4] Cheryl Morris described smudging as the burning of "smokeless herbs, tobacco-less herbs, kinnikinnick and sage," while inmates "let the smoke cover them and they pray." (Dkt. No. 87, at 53). A DOCCS directive permits Native Americans to practice smudging within areas approved by the facility superintendent. (*See* D-1, § XII(D)(8) (DOCCS Directive 4202)).

[5] Father Lamore passed away before trial. (Dkt. No. 85, at 36).

[6] On cross-examination, Defendants elicited the fact that Plaintiff is a convicted felon who twice pled guilty to criminal possession of a forged instrument in the second degree. (Dkt. No. 85, at 36–37).

Defendant Barton, who was then deputy superintendent of programs at ADK, testified that there were "three chaplains that worked there" and they would report to him with "any issues or concerns." (Dkt. No. 88, at 6). Barton was familiar with Native Americans' right to smudge and was involved in writing the institutional policy for smudging at ADK. (*Id*. at 12–14, 18–19). Barton received correspondence from Plaintiff about his desire to practice Santeria but did not "know if it was a request to burn items." (*Id*. at 14). On September 30, 2014, Plaintiff filed a grievance with Defendant Barton. (P-23). The grievance indicated that Plaintiff wanted "incense but not to burn it" and wanted to know how to get other religious items such as "herbs" and "small stones." (*Id*.). The grievance did not request permission to burn religious offerings. Barton did not remember ever meeting face to face with Plaintiff or speaking with Father Lamore "specifically" about Plaintiff's religious practices, although Barton remembered that "at one point Father Lamore had told me that he was dealing with a Santeria parishioner on items that he wanted to get into the facility." (Dkt. No. 88, at 11–12). Barton also did not recall telling Father Lamore that he would speak with Defendant Morris about Plaintiff's requests for practicing Santeria. (*Id*. at 25). Barton hypothesized that, if he ever received a request from someone wishing to "do the same thing as the Native Americans," he "would take that [request] to the director and say . . . this is the issue that we have." (*Id.* at 29). But he denied any knowledge that Plaintiff wanted to burn items as part of practicing Santeria. (*Id*. at 29).

Like Barton, Morris did not recall "receiving any requests" from Plaintiff "to burn items as part of his practice of Santeria" or to obtain "matches or lighters." (Dkt. No. 87, at 18). Though Plaintiff sent a letter to Morris on September 27, 2014, the letter did not refer to a request for "matches or lighters" or permission to "burn items." (*Id*. at 18–20). In his September 27, 2014 letter, Plaintiff complained that he had not been "accommodated to do [his] rituals in

4

[his] room and giv[en] a place for congregation." (P-22). Plaintiff requested various items, including herbs for spiritual baths, incense, and an incense holder, but the letter did not include any request to burn items for his practice of Santeria, nor did it explain the similarities between this practice and smudging by the Native Americans at ADK. (*See id*.). As the Director of Ministerial, Family and Volunteer Services, Morris supervised a staff of approximately 20 people, coordinating all religious activities for over 50 correctional facilities. (Dkt. No. 87, at 3–7). She testified that she was not aware Plaintiff had filed a grievance, (Dkt. No. 87, at 46), and that she did not recall speaking with Barton about how to respond to Plaintiff, (*id*. at 45).

Although Plaintiff testified that he "filed multiple grievances" and "wrote multiple letters to defendants" complaining about his inability to practice Santeria, (Dkt. No. 85, at 10), the only documentary trial evidence indicating that Plaintiff asked to be allowed to practice Santeria in similar ways to how the Native Americans practiced their religion is Plaintiff's April 7, 2014 appeal from a grievance filed at ADK in March 2014. (P-13, P-15). In his March 2014 grievance, Plaintiff requested matches or a lighter to make his offerings, which included burning incense and cigars. (P-13). After this grievance was denied, Plaintiff submitted an appeal, asking, "If Native Americans are accom[m]odated why can [sic] Santeria too?" (P-15). This appeal was filed approximately five months before Defendant Barton started working at ADK. (Dkt. No. 88, at 4). There was no evidence that either Defendant had any involvement in this grievance. The jury returned a verdict finding that Plaintiff failed to prove by a preponderance of the evidence that either of the Defendants violated the Equal Protection Clause. (Dkt. No. 80).

### III. STANDARD OF REVIEW

Under Rule 59(a), a court may "grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), "including if the verdict is against the weight of the evidence." *Raedle v. Credit Agricole*

*Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). The Second Circuit has explained that "a decision is against the weight of the evidence . . . if and only if the verdict is [1] seriously erroneous or [2] a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). On a Rule 59 motion for a new trial, the court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner." *DLC Mgt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* (quoting *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)). Although a court "may weigh the evidence and the credibility of witnesses" when considering a Rule 59 motion, "a judge should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Raedle*, 670 F.3d at 418 (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. The Weight of the Evidence

Plaintiff argues that the weight of the evidence showed that he was denied equal protection because Native Americans were allowed to burn herbs and other offerings but he was not. (Dkt. No. 89-20, at 22). The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In the prison context, a plaintiff must prove: (1) that the defendant treated him differently than others similarly situated; (2) that the defendant's actions were motivated by intentional or purposeful discrimination against his religion; and (3) that his treatment was not reasonably related to any legitimate

6

penological interests. *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

In this case, the jury's verdict is not against the weight of the evidence. While Plaintiff voiced numerous complaints about his inability to practice various aspects of Santeria, Defendants Barton and Morris testified they did not know Plaintiff had requested to burn offerings in a manner similar to the smudging that Native Americans were permitted to perform, and there is no documentary evidence of any such request to Barton or Morris.[7] Plaintiff argues that Barton's testimony that he did not meet with Father Lamore about Plaintiff's requests "was belied by [Plaintiff] and Father Lamore's Declaration." (Dkt. No. 89-20, at 24). However, the jury obviously credited Defendant Barton's testimony over Father Lamore's declaration, and Plaintiff is not entitled to a new trial "on the basis that there is conflicting testimony going to credibility." *Lewis v. Am. Sugar Ref., Inc.*, 325 F. Supp. 3d 321, 341 (S.D.N.Y. 2018) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992)).

Plaintiff cites the short length of the jury's deliberations as evidence that the jury did not carefully weigh the evidence. (Dkt. No. 89-20, at 23). The docket shows that the court security officers were sworn in and the jury retired for deliberations at 3:42 p.m., and that a verdict was reached at 4:14 p.m. (Text Minute Entry, Sept. 25, 2018). But "[b]rief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." *Wilburn v. Eastman Kodak Co.*, 180 F.3d 475, 476 (2d Cir. 1999).

---

[7] Plaintiff's September 30, 2014 contact slip to Barton does not, as Plaintiff argues, seek to burn incense. (P-23) Instead, Plaintiff asked Barton, "How can I get incense but not burn it?" (*Id.*).

7

Plaintiff also argues that another reason the verdict was against the weight of the evidence is "the numerous times the defendants' counsel continually brought up witchcraft, spells and black magic in his voir dire and cross examination" of Plaintiff. (Dkt. No. 89-20, at 25). The Court understands this argument as challenging the fairness of the trial rather than the weight of the evidence. *See Santa Maria v. Metro-N. Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996) ("A new trial must be granted if the court determines that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940))). The Court notes that Plaintiff does not support his argument with any citations to the trial record. A review of the trial transcript shows that Defendants' counsel used the terms "witchcraft" and "spells" only once each—and never used the phrase "black magic"—during his cross-examination of Plaintiff about Santeria. (*See* Dkt. No. 85, at 50, 59). Plaintiff's counsel did not object to those questions.[8] When Plaintiff was asked whether he was "initiated into four branches of witchcraft," he responded: "[S]adly, people tend to categorize or label Santeria as witchcraft . . . . So if you pray and—let's say, in Christianity you pray and this happens, it's a prayer that you're doing. But if you're doing it in Santeria, they call it witchcraft or hex." (Dkt. No. 85, at 50). Defendant's counsel did not pursue that questioning further.

In its final instructions, the Court expressly instructed the jury that the lawyers' questions were not to be considered as evidence. (*See* Dkt. No. 79, at 2, 7). There is no indication that the jury was unable to follow these instructions. Plaintiff has failed to establish that the unobjected-to questions from Defendants' counsel during voir dire and cross-examination were so

---

[8] Defense counsel also asked the jurors during voir dire whether Plaintiff's practice of Santeria, voodoo, and witchcraft would affect their ability to hear the case fairly and impartially. Plaintiff's counsel did not object to this voir dire.

8

prejudicial or inflammatory as to require a new trial. *See Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 127 (2d Cir. 2005) ("Not every improper or poorly supported remark . . . irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." (quoting *Matthews v. CTI Container Transp. Int'l, Inc.*, 871 F.2d 270, 278 (2d Cir. 1989))); *Manlapig v. Jupiter*, No. 14-cv-235, 2016 WL 4617305, *2–4, 2016 U.S. Dist. LEXIS 120130, *6–13 (S.D.N.Y. Sept. 6, 2016) (dismissing Plaintiff's argument because "each of the comments Plaintiffs challenge as extremely prejudicial was either proper or, if not, sufficiently addressed during trial"). The Court has considered Plaintiff's other arguments about the weight of the evidence and finds them without merit.

**B.     Jury Charge**

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997)). "[A] jury instruction will be deemed adequate if the charge . . . is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Schermerhorn v. Local 100, Transport Workers Union of America*, 91 F.3d 316, 322 (2d Cir. 1996) (internal quotation marks omitted).

Plaintiff does not challenge the Court's instruction to the jury on the equal protection claim at issue here. He argues the Court should have given his proposed instruction on "a good faith interactive process regarding an accommodation," citing case law under the Americans with Disabilities Act ("ADA") and RLUIPA. (*See* Dkt. No. 89-20, at 24–25 (citing *Holt v. Hobbs*, 135 S. Ct. 853 (2015), and *Sheng v. M&TBank Corp.*, 848 F.3d 78 (2d Cir. 2017))). Specifically, Plaintiff asked the Court to charge the jury as follows: "The defendants['] failure, if you so find,

9

to engage in a good faith interactive process regarding an accom[m]odation for Gonzalez's requests to practice Santeria can, if the jury wants to consider it as evidence tending to show discrimination." (Dkt. No. 78). Plaintiff acknowledges that this proposed charge is "novel" and "there is no case law on point." (Dkt. No. 89-20, at 25).

*Sheng* addressed an employer's obligation under the ADA to make a reasonable accommodation to an employee with a disability. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); *see* 29 C.F.R. § 2630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of accommodation."). In *Sheng*, the Second Circuit clarified that "an employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination" under the ADA. *Sheng*, 848 F.3d at 87. Plaintiff does not cite any case law extending *Sheng*'s holding beyond the ADA or disability discrimination, and has failed to cite any support for injecting ADA law on a "good faith interactive process regarding an accommodation" into this § 1983 equal protection action. The Court did not "mislead[] the jury as to the correct legal standard" or fail to "adequately inform the jury on the law" when it rejected Plaintiff's proposed interactive-process instruction. *Lore*, 670 F.3d at 156.[9]

---

[9] *Holt* in no way supports a "good faith interactive-process" instruction here. In *Holt*, the Supreme Court held that a prison's grooming policy that generally prohibited inmates from growing beards violated RLUIPA, as applied to a Muslim inmate. 135 S. Ct. at 859. The Court concluded that the policy substantially burdened the prisoner's exercise of religion and was not the least restrictive means of furthering the government's compelling interest in prison safety and security. *Id.* at 859, 862–67.

Plaintiff has not shown that the verdict is a miscarriage of justice or that he was entitled to an interactive-process jury instruction. Thus, Plaintiff's motion for a new trial must be denied.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for a new trial (Dkt. No. 89) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 9, 2019
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge